UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNDERWRITERS SAFETY AND CLAIMS, INC.                                 PLAINTIFFS

AND

FIREMAN'S FUND INSURANCE COMPANY


v.                                                         CIVIL ACTION NO. 3:15-CV-00183-CRS


TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

AND

THE CINCINNATI INSURANCE COMPANY                                     DEFENDANTS

## MEMORANDUM OPINION

The parties move this Court to determine whether a tragic and fatal injury that occurred on Bellarmine University's ("Bellarmine") campus during a men's lacrosse practice was covered under Bellarmine's insurance policies. The facts of the case are undisputed, but the parties differ in their interpretation of the insurance contracts' scope.

Plaintiffs, Underwriters Safety and Claims, Inc. ("Underwriters") and Fireman's Fund Insurance Company ("FFIC") (collectively, "Plaintiffs"), filed suit against Defendants, Travelers Property Casualty Company of America ("Travelers") and The Cincinnati Insurance Company ("CIC") (collectively, "Defendants"), for breach of contract arising from failure to defend and indemnify Bellarmine. Defendants now individually move for judgment on the pleadings and Plaintiffs move for partial summary judgment.

1

After considering the parties' briefings and for the reasons stated below, the Court will grant Defendants' motions for judgment on the pleadings and deny Plaintiffs' motion for partial summary judgment.

## BACKGROUND

The following facts are undisputed. Travelers issued Bellarmine a commercial general liability insurance policy ("Travelers Policy"), which was in effect from May 31, 2005, to May 31, 2006. While the Travelers Policy covered enumerated bodily injuries, it included two endorsements – the Athletic Participants Exclusion Endorsement and the Xtend Endorsement. These endorsements modified the policy. Notably, the Athletic Participants Exclusion Endorsement excluded coverage for bodily injury "to any person engaged in athletic, exercise, or sports activities" sponsored by Bellarmine or conducted on the university's premises. ECF No. 10-3.

CIC also issued Bellarmine an insurance policy including commercial umbrella liability coverage ("CIC Policy"). The CIC Policy included the Colleges or Schools Limitation Endorsement, which enumerated specific coverage exclusions that applied if the underlying insurance – the Travelers Policy – did not provide coverage.

In August 2005, Richard Passfield, a student at Bellarmine, underwent a medical screening as a prerequisite to participating on the university's men's lacrosse team. After the screening, a physician certified that Passfield did not suffer from a disqualifying medical condition. Passfield then joined the men's lacrosse team.

On October 31, 2005, Passfield was practicing or attending conditioning with the lacrosse team on Bellarmine's campus. During this practice or conditioning session, Passfield "suffered a sudden medical emergency, collapsed, and died." Passfield Compl. ¶ 16, ECF No. 10-5.

Passfield's Estate filed a wrongful death suit against Bellarmine. Travelers denied liability coverage, stating that the Travelers Policy did not cover the allegations in the lawsuit because the policy excluded bodily injury suffered during athletics, exercise, or sports activities under the Athletic Participants Exception. CIC also denied coverage based upon Travelers' denial and other exclusions in the CIC Policy.

Bellarmine settled the suit with Passfield's estate and the estate agreed to dismiss claims against the university. Bellarmine subsequently brought suit against Underwriters in Jefferson County, Kentucky Circuit Court. The parties settled the action and Bellarmine assigned the right, title, and interest to Underwriters and FFIC to any claims against Travelers and CIC arising from refusals to provide coverage. FFIC provided liability insurance to Underwriters for the claims Bellarmine asserted against the company.

## STANDARD

Under Fed. R. Civ. Pro. 12(c), "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The Court reviews a Rule 12(c) motion under the same standard as a Rule 12(b)(6) motion. *See Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). Hence, the complaint must establish "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotations omitted). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

3

alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The Court will "construe the complaint in the light most favorable to the plaintiff." *La. Sch. Emps.' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 477 (6th Cir. 2010).

When considering a Rule 12(c) motion for judgment on the pleadings, the Court may examine the complaint and its exhibits, as well as items within the case's record, and matters of public record. *See Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008). "[T]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead sufficient factual matter to render the legal claim plausible, i.e., more than merely possible." *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 608 (6th Cir. 2014) (citations and quotations omitted).

## DISCUSSION

The parties present the Court a narrow legal question: whether the Passfield Complaint against Bellarmine is within the scope of the university's insurance contracts with Travelers or CIC.

The "interpretation of an insurance contract is a matter of law." *KSPED LLC v. Va. Sur. Co.*, 567 F. App'x 377, 382 (6th Cir. 2014) (quoting *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 507 (6th Cir. 2003)). "[A]n insurer has a duty to defend if there is any allegation which potentially, possibly or might come within the coverage terms of the insurance policy." *KSPED*, 567 App'x at 382 (quoting *Aetna Cas. & Sur. Co. v. Com.*, 179 S.W.3d 830, 841 (Ky. 2005)). This differs from the narrower duty to indemnify. *KSPED*, 567 App'x at 382. The Court must determine at the outset of the litigation whether an insurer is required to defend an insured. *Id.* The insurer has a duty to defend its insured "if the language of an underlying complaint against

4

the insured brings the action within the scope of the insurance contract." *Westfield*, 336 F.3d at 507.

In interpreting insurance contracts, the Court liberally construes the policy in favor of coverage, but also strictly construes exclusions. *See Gager v. Cincinnati Ins. Co.*, No. 4:14-CV-00036-JHM (W.D. Ky. Mar. 27, 2015); *Eyler v. Nationwide Mut. Fire Ins. Co.*, 824 S.W.2d 855, 859 – 60 (Ky .1992). "Doubt as to the coverage of a policy should be resolved in favor of the insured." *St. Paul Fire & Marine Ins. v. Powell–Walton–Milward, Inc.*, 870 S.W.2d 223, 227 (Ky. 1994). "As long as coverage is available under a reasonable interpretation of an ambiguous clause, the insurer should not escape liability." *Id.* However, in the absence of ambiguity, the Court will strictly enforce an insurance policy according to its "plain and ordinary meaning." *Nationwide Mut. Ins. Co. v. Nolan*, 10 S.W.3d 129, 131 (Ky. 1999); *see also Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 106 (Ky. 2003).

1. **Travelers Policy**

The Travelers Policy says that it covers "bodily injury" to the extent that is covered by the insurance policy. *See* Commercial General Liability Coverage Form ("CGL") § 1.1(a), ECF No. 10-2. The policy also contains two endorsements that modify it. The Athletic Participants Exclusion Endorsement states:

> This insurance does not apply to "bodily injury" to any person engaged in athletic, exercise, or sports activities [Bellarmine] sponsor or which are conducted on premises [Bellarmine] own, rent or control.

ECF No. 10-3.

Another endorsement, the Xtend Endorsement, expands the definition of bodily injury to include "[i]ncidental medical malpractice injury." Provision E, ECF No. 10-5. "Incidental medical malpractice injury" is defined as:

> bodily injury … sustained by a person, including death resulting from … the rendering of, or failure to render … medical … service or treatment, advice or instruction;…First aid; or … Good Samaritan services."

*Id.* Provision E.2. However, the endorsement explicitly states that Provision E:

> does not apply to any "incidental medical malpractice injury" services for which coverage is *excluded by endorsement*.

*Id.* Provision E.6 (emphasis added).

Read with the endorsements, the terms of the Travelers Policy are clear and unambiguous. The policy only covers enumerated bodily injuries. The policy is modified with two endorsements. The Xtend Endorsement extends coverage to those bodily injuries sustained that result from rendering medical service, treatment, advice, or instruction, first aid, or Good Samaritan services, unless an endorsement excludes coverage. The Athletic Participants Exclusion Endorsement plainly and unambiguously excludes from coverage "any person *engaged* in athletic, exercise, or sport activities" at Bellarmine. ECF No. 10-3 (emphasis added).

These endorsements are not, as Plaintiffs argue, "*directly in conflict and inconsistent with the broadened incidental medical malpractice coverage provided by the XTEND Endorsement.*" Pls.' Resp. 12, ECF No. 17. Although the Xtend Endorsement does expand the scope of covered insureds to include, among others, athletic trainers while performing medical service, treatment, advice, instruction first aid, or Good Samaritan services, the entire provision is subject to the blanket caveat that it does not apply if excluded by an endorsement. Provision E.2-6. Even with this broad exclusion, athletic trainers are still covered as insureds in some instances. Athletic

trainers, for example, could cause injury during a consultation with a student athlete while that individual is not engaged in athletic, exercise, or sport activities.

The parties do not dispute that Passfield was engaged in an athletic activity when the fatal injury occurred. The Passfield Complaint alleges that "Passfield was participating in a conditioning and/or practice session with the Bellarmine men's lacrosse team when he suffered a sudden medical emergency, collapsed, and died." ¶ 17. This activity occurred "on Bellarmine's premises." *Id.* ¶ 19.

Plaintiffs attempt to re-contextualize the fatal injury as a result of medical malpractice or concurrently caused by medical malpractice and engagement in athletic activity. Plaintiffs argue that the allegations in the Passfield Complaint were based "almost entirely on (a) Bellarmine's failure to properly provide the pre-participation medical forms to the physicians who examined Passfield, and (b) Bellarmine's failure to render proper medical treatment." Pls.' Resp. 14. These arguments are red herrings. The Passfield Complaint did not seek redress for a bodily injury that occurred during pre-participation athletic medical screenings. The policy specifically excludes bodily injury while engaged in athletic or sports activities. Passfield was engaged in such an activity at the time of the injury. While the Court liberally construes insurance policies in favor of the insured, the Court also strictly construes exclusions. This is an instance of the latter.

Travelers did not contract to cover bodily injury occurring while an individual was "engaged in athletic, exercise, or sport activity." As Travelers did not contract to insure this type of bodily injury, the insurer did not have a duty to defend the insured in an action concerning the uncovered injury.

The Court finds that the Passfield Complaint against Bellarmine is not within the scope of the Travelers Policy. The Court will grant Travelers' motion for judgment on the pleadings.

2. **CIC Policy**

CIC issued Bellarmine an insurance policy which included umbrella coverage. The Colleges or Schools Limitation endorsement modified the CIC Policy:

> If insurance is provided to the insured by valid and collectible "underlying insurance" as listed in the Schedule of Underlying Insurance, the following exclusions do not apply….

ECF No. 14-1. The Travelers Policy is the underlying insurance. As discussed above, the Passfield Complaint is not within the scope of that policy. Hence, the underlying insurance does not provide insurance and the CIC Policy:

> [D]oes not apply to: …
>
>> 6. "Bodily injury" or "personal and advertising injury" to any person while officiating, coaching, practicing for or participating in any contest or exhibition of an athletic or sports nature, whether or not such contest or exhibition is sponsored, managed, organized or supervised by any insured….

Section 1, ECF No. 14-1. Passfield was "practicing for … [a] contest or exhibition of an athletic or sports nature" when his fatal bodily injury occurred. *Id.* This exclusion is clear and unambiguous. *See, also*, *Estate of Clem v. Western Heritage Ins. Co.*, 195 Fed. Appx. 328 (6th Cir., Aug. 10, 2006) ("the contractual phrase 'practicing for or participating in' is not ambiguous.").

The Court finds that the Passfield Complaint against Bellarmine is not within the scope of the CIC Policy. The Court will grant CIC's motion for judgment on the pleadings.

3. **Plaintiffs' Motion for Partial Summary Judgment**

Based on the above reasoning, the Court will deny Plaintiffs' motion for partial summary judgment.

The Court will enter an order in accordance with this opinion.

January 21, 2016

          **Charles R. Simpson III, Senior Judge**
          **United States District Court**